No. 19-60133

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOSEPH THOMAS; VERNON AYERS; MELVIN LAWSON,

*Plaintiffs – Appellees*

v.

PHIL BRYANT, GOVERNOR OF THE STATE OF MISSISSIPPI; DELBERT HOSEMANN, SECRETARY OF STATE OF THE STATE OF MISSISSIPPI; JIM HOOD, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, ALL IN THE OFFICIAL CAPACITIES OF THEIR OWN OFFICES AND IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE STATE BOARD OF ELECTIONS COMMISSIONERS,

*Defendants – Appellants*
_____

On Appeal from the United States District Court for the Southern District of Mississippi;
USDC No. 3:18-cv-00441-CWR-FKB

**[PROPOSED]** *AMICUS CURIAE* **BRIEF OF JUDICIAL WATCH, INC. IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

Robert D. Popper
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
rpopper@judicialwatch.org

H. Christopher Coates
LAW OFFICES OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
curriecoates@gmail.com

J. Henry Ros
CURRIE JOHNSON & MYERS, P.A.
925 Tommy Munro Drive, Suite H
Biloxi, MS 39532
hros@curriejohnson.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. Pursuant to Federal Rules of Appellate Procedure 26.1(a), *amicus curiae* Judicial Watch, Inc. hereby submits that it is a registered 501(c)(3) educational non-profit organization, that it is a private non-publicly held corporation, and that it has no parent corporation. No publicly held corporation or parent corporation owns ten percent (10%) or more of Judicial Watch's stock. Judicial Watch further certifies that, in addition to the persons and entities identified in the briefs of Plaintiffs-Appellants and Defendants-Appellees, the following persons may have an interest in the outcome of this case:

    Judicial Watch, Inc. (*amicus curiae*)

    Robert D. Popper (*counsel for amicus curiae*)

    Coates, H. Christopher (*counsel for amicus curiae*)

    J. Henry Ros (*counsel for amicus curiae*)

Dated: March 11, 2019                        Respectfully submitted,

                                                     */s/ J. Henry Ros*
                                                     J. Henry Ros
                                                   Currie Johnson & Myers, P.A.
                                                   925 Tommy Munro Drive, Suite H
                                                   Biloxi, MS 39532
                                                   hros@curriejohnson.com

## TABLE OF CONTENTS

    **Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................... iii

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ............................................. 1

ARGUMENT ............................................................................................. 1

  I.    As a Matter of Statutory Construction, the Application of "Constitutionality" in § 2284 is Cut Off by the Use of a Determiner, and Thus It Does Not Modify "Any Statewide Legislative Body." ....................................................... 1

  II.   The District Court Erred When It Relied Upon the Number of African American Candidates Elected to the Mississippi Senate as Probative Evidence of a Section 2 Violation of the Voting Rights Act .............................. 6

CONCLUSION .......................................................................................... 9

CERTIFICATE OF COMPLIANCE ................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ........................................................... 6-7

*Long v. United States*, 199 F.2d 717 (4th Cir. 1952) ................................................ 2

*Mo. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*,
   894 F.3d 924 (8th Cir. 2018) ................................................................................. 7

*Solomon v. Liberty County Comm'rs*, 221 F.3d 1218 (11th Cir. 2000) .................... 7

*Thomas v. Bryant*, Case No. 3:18-CV-441-CWR-FKB,
   2019 U.S. Dist. LEXIS 18006 (S.D. Miss. Feb. 5, 2019) ........................... 1, 2, 5

*Thomas v. Bryant*, Case No. 3:18-CV-441-CWR-FKB,
   2019 U.S. Dist. LEXIS 18006 (S.D. Miss. Feb. 16, 2019) ............................. 7, 8

*United States v. Stanford*, 883 F.3d 500 (5th Cir. 2018) ....................................... 4-5

*United States ex rel. Vaughn v. United Biologics, L.L.C.*,
   907 F.3d 187 (5th Cir. 2018) .............................................................................. 3, 4

**Statutes**

28 U.S.C. § 2284(a) ........................................................................................... *passim*

52 U.S.C. § 10301 ........................................................................................................ 6

**Other Authorities**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW:
   THE INTERPRETATION OF LEGAL TEXTS (2012) ................................. 1, 2, 3, 4

S. Rep. 94-204, 94th Cong. 2d Sess. 1976 1, 1976 U.S.C.C.A.N. 1988 .................. 5

**IDENTITY AND INTERESTS OF *AMICUS CURIAE***

Judicial Watch is a non-partisan, public interest organization headquartered in Washington, DC. Founded in 1994, Judicial Watch seeks to promote accountability, transparency and integrity in government, and fidelity to the rule of law. In furtherance of these goals, Judicial Watch regularly files amicus curiae briefs and prosecutes lawsuits on matters it believes are of public importance.

**ARGUMENT**

**I. As a Matter of Statutory Construction, the Application of "Constitutionality" in § 2284 is Cut Off by the Use of a Determiner, and Thus It Does Not Modify "Any Statewide Legislative Body."**

"A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). In its decision rejecting the application of this statute, the district court concluded that "[t]he term 'the constitutionality of' modifies all of the phrases which follow it, per the series-qualifier canon of construction." *Thomas v. Bryant*, Case No. 3:18-CV-441-CWR-FKB, 2019 U.S. Dist. LEXIS 18006, at *5 (S.D. Miss. Feb. 5, 2019), citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012). The district court thus determined that "the constitutionality of" modifies the second phrase, so that a challenge must be to the "constitutionality" of a "statewide legislative body" for a

1

three-judge court to be necessary. The district court reached this conclusion notwithstanding its concession that this reading of the statute rendered the words "the apportionment of" superfluous in the second phrase. *Id.* at \*6.

Judicial Watch respectfully submits that the district court applied the "series-qualifier canon" incorrectly. That canon provides: "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the whole series." SCALIA & GARNER, *supra* at 147. A typical example is the phrase "*Forcibly assaults, resists, opposes, impedes, intimidates, or interferes with*," in which the modifier "*forcibly* modifies each verb in the list." *Id.* at 148, citing *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952).

> Importantly, the authors explain that
>
> The typical way in which syntax would suggest no carryover modification is that a determiner (*a*, *the*, *some*, etc.) will be repeated before the second element: [for example,] *The charitable institutions or the societies* (the presence of the second *the* suggests that the societies need not be charitable).

*Id.*

That is exactly the structure of 28 U.S.C. § 2284(a). It provides for a three-judge court "when an action is filed challenging the constitutionality of the apportionment of congressional districts or *the* apportionment of any statewide legislative body." The determiner "the" (or the determining phrase "the

apportionment") cuts off the continued application of the word "constitutionality" to the second phrase. It "suggest[s]" that "no carryover modification" was intended. SCALIA & GARNER, *supra* at 148.

This Court applied this rule in *United States ex rel. Vaughn v. United Biologics, L.L.C.*, 907 F.3d 187 (5th Cir. 2018). The False Claims Act provides that an action "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." *Id.* at 195. The plaintiffs argued "that the modifier 'written' applies both to 'consent' and to 'reasons for consenting,' so it was entitled to a written explanation" for the relevant consent. *Id.* The Court noted that that "[t]he typical way to break the series" to which a modifier may apply "is to insert a determiner." *Id.*, citing SCALIA & GARNER, *supra* at 148. Accordingly, the Court rejected the plaintiffs' argument because "the possessive determiner, 'their,' is attached to the second noun in the list, 'reasons.' This makes clear that 'written' was not intended to modify both 'consent' and 'reasons.'" *Id.*

In the same way here, the presence of a determiner before the phrase "any statewide legislative body" in § 2284(a) means that the earlier phrase "the constitutionality of" was *not* meant to modify that second phrase. The plain language of the statute simply does not require that a challenge to a statewide legislative body must concern a constitutional claim in order for three judges to be

3

required.  *See United States ex rel. Vaughn*, 907 F.3d at 196 (where a determiner limited the reach of a modifier, "Congress has clearly communicated its intent through the text of the statute").

Note that, if the drafters *had* meant to require a three-judge court only where there was a constitutional challenge, it would have been easy to do so.  The most obvious way to do this, while avoiding superfluous words, would be to drop the determiner, and provide that a three-judge court "shall be convened"

> . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or [the apportionment] of any statewide legislative body.

The same meaning could have been conveyed by other simple changes:

> . . . when an action is filed challenging the constitutionality of [either] the apportionment of congressional districts or the apportionment of any statewide legislative body.

> . . . when an action is filed challenging the constitutionality[,] of the apportionment of congressional districts[,] or the apportionment of any statewide legislative body.[1]

But Congress did none of those things.  The statute must be interpreted as it is actually written.  "If the language" of a statute "is unambiguous, and does not lead to an 'absurd result,' the court's inquiry begins and ends with the plain

---

[1] *See* SCALIA & GARNER, *supra* at 161 ("Punctuation in a legal text . . . will often determine" the reach of "a modifying phrase or clause," and "[p]roperly placed commas would cancel the last-antecedent canon," ensuring that a word or clause modifies all others in a series).

4

meaning of that language." *United States v. Stanford*, 883 F.3d 500, 511 (5th Cir. 2018).[2]

Interpreting § 2284(a) incorrectly, as plaintiffs do here, could lead to anomalous results where, for example, a claim of *intentional* discrimination in the drawing of statewide districts equally violates Section 2 of the Voting Rights Act as well as the Fourteenth and Fifteenth Amendments. The identical factual claim could end up either before a single judge or before a three-judge panel, depending on how it is pleaded. This fact will allow plaintiffs to engage in forum- or judge-shopping, simply by altering how they plead their complaints. Indeed, it appears that this may have happened here, where Plaintiffs freely acknowledged in the briefing before the district court that "Plaintiffs consciously chose to bring a Section 2 results claim, and not a constitutional claim." Plaintiffs' Memorandum in Opposition to the Motion for Stay Pending Appeal Filed by the Governor and the Secretary of State at 6, *Thomas v. Bryant*, Case No. 3:18-441-CWR-FKB (S.D. Miss. Feb. 22, 2019), ECF No. 65.

---

[2] Judicial Watch respectfully submits that the language of § 2284 is unambiguous for the reasons stated in the text, so that any resort to legislative history is unnecessary. But Judicial Watch agrees with Defendants-Appellants that the legislative history of § 2284 clearly establishes that Congress intended challenges to statewide redistricting, and particularly those brought under Section 2 of the Voting Rights Act, to be heard by three judge panels. Defendants-Appellants' Emergency Motion for Stay of Judgment, March 8, 2019 at 19 & n. 8, citing S. Rep. 94-204, 94th Cong. 2d Sess. 1976 at 1, 1976 U.S.C.C.A.N. 1988; and *id*. at 9 ("Three-judge courts would continue to be required in the review of certain cases under . . . the Voting Rights Act of 1965, 42 U.S.C. section 1971g, 1973(a), 1973c and 1973h(c).").

**II.  The District Court Erred When It Relied Upon the Number of African American Candidates Elected to the Mississippi Senate as Probative Evidence of a Section 2 Violation of the Voting Rights Act.**

In 1982 Congress, in amending Section 2 of the Voting Right Act of 1965, 52 U.S.C. § 10301, added a *proviso* to the amendment that states that "nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." Subsequently, in *Johnson v. De Grandy*, 512 U.S. 997 (1994), the U.S. Supreme Court elaborated on the distinction between this anti-proportional representation *proviso* and the term "proportionality" in vote dilution cases brought under Section 2.[3]  In opining about this distinction, the Court stated,

> "Proportionality" as the term is used here links the number of majority-minority voting districts to minority members' share of the relevant population. The concept is distinct from the subject of the proportional representation clause of § 2, which provides that "nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." . . . This proviso speaks to the success of minority candidates, as distinct from the political or electoral power of minority voters. *Cf.* Senate Report 29, n. 115 (minority candidates' success at the polls is not conclusive proof of minority voters' access to the political process).  And the proviso also confirms what is otherwise clear from the text of the statute, namely, that the ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success . . . .

---

[3] *De Grandy* involved challenges to single-member legislative districts in the Florida Legislature. 512 U.S. at 1000.

*Id.* at 1014 n. 11; *accord*, *Mo. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, 894 F.3d 924, 938-40, n.12 (8th Cir. 2018); *Solomon v. Liberty County Comm'rs*, 221 F.3d 1218, 1226, n. 5 (11th Cir. 2000). This distinction between the proportional election of minority representatives, which is not required by Section 2, and proportionality between the minority population and the number of majority-minority districts is an important one in Section 2 jurisprudence that the district court confused.

In making its determination that Mississippi Senate "District 22's lines result in African-Americans having less opportunity . . . to elect the State Senator of their choice" (*Thomas v. Bryant*, Case No. 3:18-CV-441-CWR-FKB, 2019 U.S. Dist. LEXIS 18006, at *38 (S.D. Miss. Feb. 16, 2019)), the district court relied upon a number of findings that conflict with the anti-proportional representation *proviso* of Section 2. First, the district court noted that Mississippi's non-white population, according to the 2010 Census of Population, is 40.9%.[4] The district court then went on to state that "one might have expected fresh maps to result in an upper legislative chamber with something like 31 white Senators and 21 non-white

---

[4] The district court's use of the 40.9 percentage of Mississippi's "non-white" population, instead of the percentage of Mississippi's "African American or black" population (which is 37.8 percent) was incorrect. Plaintiffs in this lawsuit challenged Senate District 22's configuration solely on the grounds that it denies to black voters the equal opportunity to participate politically and to elect candidates of their choice. Since Plaintiffs in this action made no claims that Senate District 22's boundaries adversely affect non-white citizens who are *not* black, the percentage of Mississippi's population that is black, and not "non-white," is the relevant basis for comparison.

7

Senators." *Id*. at 37. This reasoning is directly contrary to the anti-proportional representation *proviso* of Section 2 that makes clear that minority groups do not have a statutory right to be able to elect a certain number of candidates of a particular race.

In addition, the district court stated in its opinion that the Mississippi "Senate has never had more than 13 African-American members" at one time. *Id.* Further, the district court summarized the evidence regarding the election of African Americans to the Mississippi Senate this way: "[i]n plain English, Mississippi's Senate is much whiter than Mississippi." *Id.* In reaching its conclusions, these statements by the district court make clear that it incorrectly gave great probative weigh to the fact that the percentage of Mississippi's senators who are African American is not proportional to the percentage of statewide population that is African American. Again, this fundamentally incorrect approach to finding a violation of Section 2 conflicts with the statute's *proviso*, and weighs in favor of a stay of the district court's order pending appeal.

## CONCLUSION

For the foregoing reasons, *amicus curiae* Judicial Watch, Inc. respectfully requests that the Court enter a stay of the district court's order pending the outcome of Defendants-Appellants' appeal.

Dated: March 11, 2019    Respectfully submitted,

/s/ J. Henry Ros
J. Henry Ros
CURRIE JOHNSON & MYERS, P.A.
925 Tommy Munro Drive, Suite H
Biloxi, MS 39532
hros@curriejohnson.com

H. Christopher Coates
LAW OFFICES OF H. CHRISTOPHER COATES
934 Compass Point
Charleston, SC 29412
curriecoates@gmail.com

Robert D. Popper
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
rpopper@judicialwatch.org

*Attorneys for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) and 29(a)(5) because, excluding parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2, this document contains 2,046 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2013, in 14-point Times New Roman font and 12-point Times New Roman font for footnotes.

Dated: March 11, 2019  */s/ J. Henry Ros*
J. Henry Ros