## BUTLER | SNOW

May 24, 2019

Hon. Lyle W. Cayce
Clerk of the Fifth Circuit Court of Appeals

   Re: *Joseph Thomas, et al. v. Phil Bryant, et al.*, No. 19-60133 – Letter Brief

Dear Mr. Cayce:

   Pursuant to your letter dated May 17, 2019, Governor Phil Bryant and Secretary of State Delbert Hosemann submit the following response:

   At the outset, the issues posed by the Court simply underscore the very reason the district court and the motions panel should have applied the doctrine of laches to bar plaintiffs' claim. Instead, we are now faced with a timeframe that is virtually impossible to carry out in an orderly and timely fashion. Regardless, an adequate and necessary remedy is available to cure the district court's error and to prevent such a late-hour spectacle from reoccurring on the brink of every impending election cycle.[1]

---

[1] Before reviewing the district court's final judgment and plaintiffs' assertion of mootness, the Court must resolve defendants' challenge to the district court's jurisdiction. As the Supreme Court recognized in *Bender v. Williamsport Area School Dist.*, 475 U.S. 534 (1986):

> [E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review. . . . And if the record discloses that the lower court was without jurisdiction this court will notice the defect. . . . [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

*Id.* at 541 (internal quotations and citations omitted).

**TOMMIE S. CARDIN**
601.985.4570
Tommie.Cardin@butlersnow.com

*Post Office Box 6010*
*Ridgeland, MS 39158-6010*

*Suite 1400*
*1020 Highland Colony Park*
*Ridgeland, Mississippi 39157*

T 601.948.5711 • F 601.985.4500 • *www.butlersnow.com*

BUTLER SNOW LLP

1. <u>Case or Controversy & Mootness</u>

J.R. 202, as passed by the Mississippi legislature on March 27, 2019, ROA.608—636, makes clear that the legislature only altered the boundaries of Senate District 22 ("SD22") under protest to avoid the implementation of the district court's wholesale and hasty adoption of plaintiffs' remedial plan:

> BE IT FURTHER RESOLVED, That this resolution shall take effect and be in force from and after its passage; however, in the event that the appellants prevail in the appeal of the case of Joseph Thomas, et al. v. Phil Bryant, et al., No. 19-60133 (5th Cir. Mar. 15, 2019), this resolution *shall be repealed and the districts as originally configured in Chapter 2234, Laws of 2012, shall take effect*.

ROA.635-36 (emphasis added). The legislature altered the boundaries of SD22 only after both the district court and the motions panel denied a full stay pending appeal. There remains a "live" controversy as the Court's reversal of the district court's decision would automatically revert SD22 to its original, precleared boundaries from 2012—fully realizing the legislature's intent. *See Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018).

For this reason, this case is not moot. The district court's injunction has been merely stayed, not vacated. Should this Court reverse, J.R. 202 mandates that SD22 and SD13 shall revert to their original boundaries from 2012. The Court's resolution of the pending appeal will determine which configurations of SD22 and SD13 candidates will run under. There is nothing moot about deciding this significant issue.

Yet, if somehow the Court found mootness applicable, this very case illustrates the exception to the mootness doctrine of "capable of repetition, yet evading review."[2] If this case is not reversed, then future litigants will have precedent to bring eleventh-hour redistricting litigation to evade any meaningful appellate review or legislative deference. Plaintiffs will file suit on the eve of an election deadline, and if they obtain a favorable decision, may avoid appellate review should a legislature temporarily rectify the purported violation to avoid the implementation of a court-ordered plan while the appeal is heard on the merits. Even more importantly, such a process confuses voters and denies candidates the opportunity to select their district with confidence and initiate campaign activities. In this case, the lower court mandated new districts only days before the filing deadline. This Court should avoid setting such precedent.[3]

2. Relief.

With oral argument set for June 11, 2019, defendants acknowledge—because of the inexplicable delay by plaintiffs—that if the Court reverses, certain measures would have to occur prior to finalizing the ballots in the statewide

---

[2] Since this case is an election controversy which is a "paradigmatic example [ ] of [a] case [ ] that cannot be fully litigated before the particular controversy expires," the focus on meeting the exception is on the second prong of the applicable test, which this Court has "applied . . . somewhat loosely" – whether other individuals would be affected by the continual existence of the challenged practice. *Moore v. Hosemann*, 591 F. 3d 741, 744-45 (5th Cir. 2009).

[3] Specifically, in response to issues 3(a) and (b) in the request for the letter brief, defendants found no additional authorities other than those cited herein and in their Reply Brief. Typically, what is moot is the injury sustained by plaintiff(s). Here, however, defendants have suffered ongoing injury due to the error of the district court. This unique factual posture fits within the rationale of the cited authorities.

election management system by June 17, 2019. However, notwithstanding the prejudice caused by plaintiffs in their delay, defendants and related parties will make every effort to support a workable election process.

If possible, defendants request the Court to issue an order as soon as possible following oral argument, with the opinion to follow at a later date.[4] In the order, the Court can reopen the qualifying period under the original boundaries for SD22 and SD13 for three (3) days until 5 p.m. on June 14, 2019. The Secretary of State will provide notice to the public to this effect. This period would allow any additional candidates who wished to qualify under the original boundaries of SD22 and SD13.[5] All candidates who are currently qualified under the original boundaries of SD22 and SD13 will remain qualified under the original boundaries of each district as their respective residences remain in SD22 and SD13 regardless of which plan is in effect.

After the qualification period, the Secretary of State will request the statewide party executive committees to meet on June 14, 2019 at 5:00 pm, or shortly thereafter, to certify the qualifications of additional candidates, if any, from SD22 and SD13. Once certified, the Secretary of State's office can finalize the

---

[4] Both the district court and motions panel issued such orders. ROA.355; ROA.557.
[5] Candidates in the original district boundaries of SD22 and SD13 have already had almost the entire original qualifying period to qualify (January 2—February 26, 2019). ROA.473. The district court ended the qualifying period three (3) days from the original filing period. Allowing this additional number of days for qualifying in the original district boundaries would afford any additional prospective candidates the same amount of time as the full original qualifying period.

ballots on June 17, 2019, or shortly thereafter, to satisfy the June 22, 2019 deadline for the mailing of ballots to active service military and overseas residents. All other election deadlines would remain the same.

Alternatively, there could be a special election for these districts. Under this approach, the Court could schedule a primary election date for SD22 and SD13, thereby altering other impending election deadlines. *See Watkins v. Mabus*, 771 F. Supp. 789 (S.D. Miss. 1991) (altering candidate qualifying, absentee voting and primary election for Mississippi legislative elections). These deadlines would need to be adjusted in a manner which causes the least disruption possible to the established election cycle. The special primary elections would need to be scheduled on or before August 13, 2019 to allow nominees to run in the general election currently scheduled for November 5, 2019.[6]

Accordingly, relief is available to correct the wrong of the district court. Whatever the Court decides as the best path of relief in restoring these districts to their original boundaries, defendants are willing, ready and able to meet such a schedule.

Sincerely,
*s/ Tommie S. Cardin*
TOMMIE S. CARDIN (MSB #5863)

---

[6] In the event that the Court declines to order a special election, in January 2020, the Mississippi Senate may declare the seats in SD22 and SD13 vacant, obligating the Governor to set a special election in those districts to fill these seats. *See* MS CONST., art. 4, § 38; Miss. Code Ann. §§ 23-15-851 and 23-15-959.

cc:    B. Parker Berry
Michael B. Wallace
Charles E. Cowan
Robert B. McDuff
Jon M. Greenbaum
Beth L. Orlanksy
Joseph H. Ros
47620564.v1